**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| ) | |
| NANCY L. WINTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-10109-DJC |
| ) | |
| CHASE BANK, ) | |
| ) | |
| Defendants. ) | |
| ) | |

_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                    March 12, 2013

## I.      Introduction

Plaintiff Nancy L. Winter ("Winter") brings this action against Defendant Chase Bank ("Chase") seeking an accounting of her loan ("Count I") and alleging a breach of the implied covenant of good faith and fair dealing related to her applications to modify the terms of a loan secured by a mortgage on her property ("Count II").  D. 1.  Chase has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  D. 8.  Contemporaneous with her opposition to that motion, Winter moved to amend her complaint to add a count of misrepresentation ("Count III").  D. 15.  For the reasons stated below, the Court ALLOWS Winter's motion to amend but GRANTS Chase's motion to dismiss Counts I and II.

## II.     Facts and Procedural History

For the purposes of considering Chase's motion to dismiss, the Court accepts the "[n]on-conclusory factual allegations" from Winter's complaint as true, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all reasonable inferences in favor of the

plaintiff[].”  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  Winter owns a “combination second home and investment property” at 79 Pleasant Street in Meredith, New Hampshire (the “property”).  Compl., D. 1 ¶¶ 1, 10.  The property is encumbered by a first mortgage securing a loan made by Chase.  Id. ¶ 5.  The original principal balance of the loan was $380,000, but Chase claims indebtedness in excess of $450,000.  Id.  Winter disputes a portion of this indebtedness alleging that Chase has omitted several payments made by Winter or on Winter's behalf to Chase.  Id. ¶¶ 5, 7.  On various occasions, Winter has demanded a complete accounting of all charges and payments from Chase, but Chase has refused to provide a complete and accurate accounting.  Id. ¶ 8.

Approximately two years ago, Winter sought a loan modification from Chase pursuant to its Making Home Affordable Program (“HAMP”).  Id. ¶ 9.  At all times, Winter made Chase aware that the property was a “combination second home and investment property.”  Id. ¶ 10.  At all times, Chase acknowledged that representation and advised Winter that “her application was appropriate either for the HAMP program or for other internal Chase modification programs.”  Id.  In reliance on Chase's statements and persistent and ongoing solicitation of Winter's HAMP application, Winter applied for a loan modification from Chase.  Id. ¶ 11.  Over a two-year period, Winter was “obligated” to submit more than seven original HAMP applications to Chase, to send in supporting paperwork repeatedly and to provide additional and redundant information on numerous occasions.  Id. ¶ 12.

During this time, Chase advised Winter that her loan modification application had been denied and “from time to time” claimed that Winter was not entitled to a modification on the property notwithstanding Chase's prior representations that she was entitled to apply for the loan modification programs.  Id. ¶ 13.  On November 21, 2011, Chase denied Winter's then pending

request for a modification "based on the fact that the property [was] not her primary residence, that her income [was] insufficient to support existing or modified mortgage payments and that her property [was] underwater as to value."  Id. ¶ 14.  Winter alleges that these (latter two) statements were false, id. ¶ 14, and that as a result of Chase's refusal to modify her loan she "has suffered significant monetary damage in connection with this matter and the possible loss of her residence," id. ¶ 16.

Chase has now moved to dismiss Winter's complaint under Fed. R. Civ. P. 12(b)(6). D. 8.  Winter opposes that motion and has filed a motion to amend her complaint to add a count of misrepresentation.  D. 15 Exh. 1 ¶¶ 23-29.  Chase opposes Winter's motion to amend.  D. 18-19.  The Court heard oral argument on both motions on March 11, 2013 and took the matter under advisement.

## III.   Discussion

### A.   Addressing Both the Motion to Dismiss and the Motion to Amend

Winter has moved for leave to amend the complaint.  D. 15.  "The [C]ourt should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  To determine whether justice requires amendment, the Court must decide whether such amendment would be futile since "[f]utility alone is 'fully sufficient to justify the denial of a motion to amend.'"  Okoye v. Bank of New York Mellon, No. 10-11563-DPW, 2011 WL 3269686, at *12 (D. Mass. July 28, 2011) (quoting Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).  To evaluate futility, the Court determines if the amended complaint fails to state a claim upon which relief could be granted, which is the same standard used by the Court to evaluate a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Hatch, 274 F. 3d at 19; Okoye, 2011 WL 3269686 at *12; see Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (noting

that "[t]here is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim").  Accordingly, the Court will address Winter's motion to amend her complaint alongside Chase's motion to dismiss.

**B.      Each Count Alleged by Winter Fails to State a Claim Upon Which Relief Can Be Granted, But Winter Shall Be Allowed to Amend Her Complaint**

*1.      Standard of Review*

To rule on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the well-plead facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  The Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom."  Ruiz v. Bally Total Fitness Holding Corp., 496 F. 3d 1, 5 (1st Cir. 2007).  The Court will dismiss a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To state a plausible claim, a complaint must contain sufficient factual matter that, accepted as true, would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F. 3d 465, 471 (1st Cir. 2012).

*2.      Winter's Proposed Amended Complaint*

Winter's proposed amended complaint asserts a claim of fraudulent misrepresentation, alleging that Chase knowingly made false representations when Chase advised her that she was qualified to apply for a loan modification.  D. 15 Exh. 1 ¶¶ 10, 23-29.[1]  The elements of

---

[1] Massachusetts recognizes the torts of fraudulent and negligent misrepresentation.  See generally 14C Howard J. Alperin, Mass. Practice, Summ. of Basic Law §§ 17.56-17.62 (4th ed. 2009).  Although Winter does not state the theory under which she proceeds, it is clear from her

fraudulent misrepresentation are that the defendant (1) made a false representation of material

fact (2) with knowledge or recklessness as to its falsity (3) for the purpose of inducing the

plaintiff to act, (4) and that the plaintiff reasonably relied upon the representation as true and

acted upon it (5) to her detriment.  Taylor v. Am. Chemistry Council, 576 F. 3d 16, 31 (1st Cir.

2009) (quoting Russell v. Cooley Dickinson Hosp. Inc., 437 Mass. 443, 458 (2002)); see

generally 14C Howard J. Alperin, Mass. Practice, Summ. of Basic Law §§ 17.56-17.61 (4th ed.

2009).  A claim of fraudulent misrepresentation is subject to the heightened pleading standard of

Fed. R. Civ. P. 9(b).  Corcoran v. Saxon Mortg. Servs., Inc., No. 09-11468-NMG, 2010 WL

2106179, at *5 (D. Mass. May 24, 2010).   Under the relevant pleading standard, Winter's

allegations, as currently pled in the proposed amended complaint, are inadequate since Winter's

proposed amended complaint fails to identify who made the statement, and where and when it

was made.  D. 15 Exh. 1 ¶¶ 23-29.  Winter's allegations are that "[Chase] advised [Shaw] that

her loan modification application had been denied based on reasons that were unsupportable and

from time to time [and] claimed that she was not entitled to a modification on the property

notwithstanding [Chase's] prior representations that she was so entitled to apply."  D. 15 Exh. 1

¶ 13.  Winter alleges that "[o]n November 21, 2011, [Chase] denied [Winter's] current request

for a modification based on the fact that the property is not her primary residence and on

spurious allegations that her income is insufficient to support her mortgage payments whether or

not they are modified and that her property is underwater as to value [and that] [t]hese statements

---

proposed pleading and supporting memoranda that she alleges a claim for fraudulent
misrepresentation.  Pl. Opp., D. 14 at 11 (stating elements of fraudulent misrepresentation and
citing to Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991) (stating elements for fraudulent
misrepresentation), Acushnet Fed. Credit Union v. Redonich, 26 Mass. App. Ct. 604, 605 (1988)
(same) and Powell v. Rasmussen, 355 Mass. 117, 118-119 (1969) (same)); see D. 15 ¶ 24
(alleging Chase misrepresented "with specific knowledge of the falsity of their representation");
Pl. Opp., D. 14 at 12 (stating that Chase "had actual knowledge that Plaintiff would not qualify
for a modification" and that Chase "lied to [Winter]").

by [Chase] are patently false." D. 15 Exh. 1 ¶ 14.   Winter further alleges that "[w]ith specific

knowledge of the falsity of their representations the Defendant advised [Winter] and [Winter's]

agents that [Winter] was qualified to apply for [Chase's] Making Home Affordable Program as

well as [Chase's] other modification programs." D. 15 Exh. 1 ¶ 24.   Winter's allegations are

merely a description of a statement "made by an unidentified person at an unnamed place and at

an unspecified time" which is "patently inadequate under Rule 9(b)." Rodi v. S. New England

Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004); see also Corcoran, 2010 WL 2106179, at *5

(dismissing a misrepresentation claim for failing to "come close to complying with Fed. R. Civ.

P. 9(b)"); Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 WL 5989705 at *5 (D.

Mass. Nov. 29, 2012) (dismissing claim for fraud for failing to meet Fed. R. Civ. P. 9(b)

pleading standard).

Winter also states in her complaint that Winter "was damaged economically in

connection with [Chase's] false representations as [Chase] continued to maintain [the property]

and pay interest and taxes on the mortgage rather than selling same. [Winter's] reliance occurred

during a period of time when real estate prices in New Hampshire declined precipitously." D. 15

Exh. 1 ¶ 29.   In her sur-reply opposing Chase's motion to dismiss, Winter expands on her

pleading, stating that her damage was the "continuation of two years of mortgage payments

during the application process at a time when [the] property, just like other similar New

Hampshire property was suffering significant declines in value." Pl. Sur-Reply, D. 21 at 3.   As

alleged in her proposed amended complaint, D. 15, Exh. 1, Winter's claim is insufficient as

currently pled to show damage. See Okoye, 2011 WL 3269686, at *15 (finding plaintiffs'

statement that they "ha[d] been and continued to be damaged" to be insufficient under Iqbal

standards); see Iqbal, 556 U.S. at 677.

> 3.      *The Court, However, Does Not Conclude that Allowing Winter to Amend to State a Claim for Misrepresentation Would be Futile*

However, based upon Winter's motion filings and the representations made by her counsel during oral argument, the Court does not conclude that allowing Winter to amend to state a claim of misrepresentation would be futile.  Winter's claim rests on the allegation that Chase told her that she was qualified to apply for a loan modification when in fact she was not. D. 15 Exh. 1 ¶ 23.  She contends that Chase knew she was not "qualified to apply" because her property was not her primary residence.  D. 15 Exh. 1 ¶¶ 10, 24; see also Pl. Opp. D. 14 at 12 (stating that "[i]n this case [Chase] had actual knowledge that [Winter] would not qualify for a modification because the subject property was a combination second home and investment property.  Not only did [Chase] omit to so advise [Winter] of this fact but [Chase] lied to [Winter] by telling her she was qualified to apply").

The Court cannot say that it would be futile to allow a proper amendment that complies with the heightened pleading rules of Fed. R. Civ. P. 9(b).  Here, Winter has clarified that her position is that Chase made a representation whose falsity could have been determined at the outset of the modification application process, and that this false representation induced her to enter into a long-running modification application process that was doomed from the start.  Here, Winter's allegation is that Chase relied in part "on the fact that the property is not her primary residence" as a reason ultimately to deny her modification, D. 15 Exh. 1 ¶ 14, which according to Winter was something she had told Chase from the beginning, D. 15 Exh. 1 ¶ 10.  Properly pled under 9(b), the Court cannot say that more definite allegations would not state a claim for misrepresentation.  See Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 263 (2011) (noting that "[a]lthough one cannot reasonably infer from the facts as pled that [the

complaint stated a claim], plaintiff did make certain oral representations in court, regarding [defendant's] actions in this case, that lend support to . . . liability" and ordering amendment).

A few additional words are warranted regarding the alleged damage resulting from Chase's alleged misrepresentation.  Winter cites no support for the proposition that paying one's contractual mortgage obligation can constitute damage, although the Court notes that at least one judge in this district has opined that a party can be misled into continuing performance under a contractual obligation, and that resulting harm can perhaps provide a measure of damages.  In re JPMorgan Chase Mortg. Litig., 880 F. Supp. 2d 220, 238 (D. Mass. July 27, 2012) (recognizing a potential of economic loss where "plaintiffs allege that they owe more to Chase now, after participating in the modification process, than they would have owed had they not participated" and "even more aggrieved were plaintiffs who allege that they would have fared better economically had their homes been foreclosed by Chase at the outset instead of at the end of a drawn-out and ultimately futile modification process that Chase had no real intention of honoring").  The parties have not had the opportunity to address whether this potential measure of damages should be applied here.

> 4. *Winter's Complaint Fails to State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing*

Winter asserts that Chase's actions during her request for a loan modification constitute a breach of the implied covenant of good faith and fair dealing.  D. 15 Exh. 1 ¶¶ 19-22.  The covenant of good faith and fair dealing is implied in every contract in Massachusetts.  Speleos v. BAC Home Loan Servicing, L.P., 755 F. Supp. 2d 304, 311 (D. Mass. 2010).  It requires that "neither party . . . do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract."  See T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570 (2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471

(1991)).  To prevail on this claim, a plaintiff must show that the defendant "acted with . . .

dishonest purpose or [with the] conscious wrongdoing necessary for a finding of bad faith or

unfair dealing."  Schultz v. R.I. Hosp. Trust Nat'l Bank, N.A., 94 F.3d 721, 730 (1st Cir. 1996).

"[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and

agreed expectations of the parties in their performance."  Uno Rests., Inc. v. Boston Kenmore

Realty Corp., 441 Mass. 376, 385 (2004).   Therefore, the court must consider whether the

conduct alleged conformed to these expectations.  See Speakman v. Allmerica Fin. Life Ins., 367

F. Supp. 2d 122, 132 (D. Mass. 2005).

However, the "scope of the covenant is only as broad as the contract that governs the

particular relationship."  T.W. Nickerson, 456 Mass. at 570.  The covenant only "governs

conduct of parties after they have entered into a contract; without a contract, there is no covenant

to be breached."  Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230

(1st Cir. 2005).  Here, the parties disagree as to what constitutes the contract from which this

claim for breach of the implied covenant of good faith and fair dealing arises.  Chase maintains

that the original written note and mortgage for Winter's property constitute the only contract

between the parties.  Def. Mem., D. 9 at 6.  Winter contends that the relevant contract was

"formed when Chase offered [Winter] the possibility of modifying her loan based upon their

modification requirements [and she] relied on the representations made to her in accepting the

modification application invitation."  Pl. Opp., D. 14 at 9.

Chase points out that Winter does not allege the existence of her view of the operative

contract in her complaint, and only posits her view when responding to Chase's motion to

dismiss.  Def. Reply, D. 24 at 1-2.  Winter responds that a "careful reading" of ¶¶ 8-16 of her

complaint "alleged a contract between [Winter] and [Chase] concerning the loan modification

process." Pl. Sur-reply, D. 21 at 1.  The Court has conducted this careful reading, but finds that Winter's allegations do not plausibly state—or imply such as might suggest a viable further amendment—a claim that the parties had formed a contract from which the implied covenant would arise.  See Santelises v. Bank of America, N.A., No. 12-11164-NMG, 2012 WL 6045986, at *4 (describing discussions leading up to consideration to modify a loan as at most an "agreement to agree"); see also Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (noting that "to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement [and the] parties must. . . have progressed beyond the stage of 'imperfect negotiation'").

Winter also states in her complaint that Winter "has suffered considerable economic damage as the result of [Chase's] breach and is faced with the additional potential damage of the loss of the property."  D. 1 ¶ 22.  Winter's allegation of damage suffers from the same defect described above regarding her proposed amended claim for misrepresentation.  Winter fails in her pleading to point to any reliance beyond her initial decision to apply for a loan modification, D. 1 ¶ 11, that led to damage or any connection between Chase's alleged behavior and Winter's loss.  D. 1, ¶¶ 1-22.  Winter's complaint does not allege facts connecting Chase's alleged breach with Winter's alleged loss or to support the claim that she was actually damaged.  See Okoye, 2011 WL 3269686, at *15 (finding plaintiffs' statement that they "ha[d] been and continued to be damaged" to be insufficient under Iqbal standards); see Iqbal, 556 U.S. at 677.

Winter fails to state a claim that Chase breached the covenant of good faith and fair dealing in the absence of the existence of any contract giving rise to such covenant.  She also

fails to plausibly plead that she has been damaged by such alleged breach.  For each of these reasons, Count II of the amended complaint is dismissed.

5.      *Winter's Complaint Fails to State a Claim For an Accounting*

Winter initially argued that she was entitled to a "full and complete accounting of all charges and payments on her loan."  Compl., D. 1 ¶¶ 17-18.  Under Massachusetts' law, a statutory right to an accounting arises when the mortgagee has taken possession of the property and mortgagor has redeemed the property.  Mass. Gen. L. c. 244 § 20.  In response to Chase's motion to dismiss, however, Winter has conceded that Mass. Gen. L. c. 244. § 20 does not apply in this case.  Pl. Opp., D. 14 at 17.

A plaintiff may also seek an accounting under the Real Estate Settlements Procedure Act ("RESPA") by sending a qualified written request to the "servicer of a federally related mortgage loan."  See 12 U.S.C.A. § 2605(e)(1)(A) (West 2012).  That statute states:  "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide [a response]."  Id.  The statute defines a qualified written request to include "the name and account of the borrower; and . . . a statement of the reasons for the belief of the borrower . . . that the account is in error or . . . sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C.A. § 2605(e)(1)(B) (West 2012).  "In order to make out a claim for relief under § 2605(e), [a Plaintiff] must allege sufficient facts to show: (1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred 'actual damages' as a consequence of the servicer's failure."  Okoye, 2011 WL 3269686, at *17 (internal quotation omitted); see also Jefferies v. Ameriquest Mortg. Co., 543 F. Supp. 2d 368, 384-85 (E.D. Pa. 2008) (noting that "[b]ecause [Plaintiffs] did not send a qualified

11

written request . . . [the servicer] did not have a statutory duty to send more information to [Plaintiffs] under RESPA").

Winter concedes that she did not comply with RESPA by submitting a qualified written request to Chase at the time of the filing her complaint and that she has only recently sent Chase a qualified written request "that Chase will now be obligated to supply."  D. 14 at 17.  Since Winter concedes that she did not meet the requirements of RESPA at the time her complaint was filed and does not yet alleged that Chase's response is inadequate, Count I is dismissed.[2]

## IV.     Conclusion

For the reasons given above, the Court GRANTS Chase's motion to dismiss Counts I and II, D. 8, but also GRANTS Winter's motion to amend her complaint, D. 15.  Winter shall file an amended complaint that shall be limited to alleging a claim for fraudulent misrepresentation within 21 days of the date of this Order.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] Winter asks this Court not to dismiss Count I in case Winter later concludes that Chase's response to her qualified written response is inadequate.  Pl. Mem. Opp., D. 17 at 11. The Court will not do so where there is no current case or controversy regarding Chase's compliance with Winter's qualified written response.  This holding, of course, does not prevent Winter from bringing any subsequent action to allege a violation of RESPA.